IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 8, 2009

Charles R. Fulbruge III
Clerk

No. 08-40308

AMELIA JARAMILLO

Plaintiff-Appellant

v.

CITY OF MCALLEN, TEXAS;
HERMELINDA SMITH;
EDUARDO SMITH; MARCELO SMITH

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
(07-CV-163)

Before GARWOOD, GARZA and OWEN, Circuit Judges.

PER CURIAM:[*]

Plaintiff Amelia Jaramillo appeals the district court's grant of defendant City of McAllen's Rule 12(b)(6) motion to dismiss her several times amended complaint against the City, under 42 U.S.C. § 1983 and under the Texas Tort Claims Act, TEX. CIV. PROC. & REM. CODE § 101.021(2), seeking to impose liability on the City for injuries she suffered as a result of being attacked on

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

March 1, 2006 by a dog owned by co-defendants Hermelinda Smith and Eduardo Smith while plaintiff was walking on public property within the City from her place of employment to her home.[1] It is alleged that on March 1, 2006, the Smiths were negligent and grossly negligent, proximately causing plaintiff's injuries, in failing to properly confine, leash or muzzle their dog and in failing to post a warning sign on their property and have liability insurance, as required by City's 1994 animal control ordinance. As to the City, it is alleged that "on one or more occasions prior to March 1, 2006 . . . the Smiths' dog attacked a human" within the City but not on the Smiths' property, and that the City knew that but, contrary to the provisions of its animal control ordinance, did not seize the dog and deliver it to an animal control shelter, declare it a vicious animal, notify the Smiths of or conduct a hearing to declare the dog vicious, and "did not condition the City's release of the Smiths' dog to the Smiths." The referenced "one or more occasions prior to March 1, 2006 " are wholly unidentified.[2] It is alleged that by violating its animal control ordinance the "City has created a custom, usage and/or policy of creating dangers of injury and death affecting the public traveling within its borders which would not otherwise exist," that "prior to March 1, 2006 " the City, "pursuant to its usual custom, usage and/or policy . . . . intentionally, recklessly and maliciously acted with reference to the Smiths' dog" in violation of its animal control ordinance. Also alleged is that "said

---

[1] On March 17, 2008, the same day that the district court granted the City's Rule 12(b)(6) motion as to the claims against it, the court also granted plaintiff's motion to sever her claims against the Smiths from her claims against the City and to remand the claims against the Smiths to state court from whence the City had removed them (on the basis of federal question) following the assertion of the § 1983 claim against it in the state court suit. Thus the district court's March 17, 2008 orders disposed of the entire case before it.

[2] There is absolutely no allegation even suggesting when – whether a month, or a year or two years prior to March 1, 2006 – any such prior incident occurred, nor where (other than within the City and not on the Smiths' property) it occurred, nor any other even remotely identifying allegation whatever. There is no identification, either by name or position or otherwise, of any City personnel or victim involved. And, there is nothing to suggest that there was more than one such incident.

custom, usage and/or policy of City has repeatedly and foreseeably created significant risks of bodily injury and death for members of the public situated or traveling within its borders, including plaintiff."[3]   There is no allegation whatever in the complaint that the City or any City officer or employee or anyone acting for the City ever had any intent to injure plaintiff or anyone else, or knew of any danger to plaintiff or to any particular, identifiable discrete group including plaintiff (as distinguished from members of the public at large within the City).  There is no allegation that the Smiths' dog was any more vicious or dangerous on March 1, 2006 than it had been on any of the alleged "one or more occasions prior to March 1, 2006" when it "attacked a human;" nor is it in anyway alleged that the City ever did anything to the dog which made it more vicious or changed it in any way.

Appellant makes no complaint on appeal that she was denied any leave to further amend or that her final amended complaint did not plead other than her best case.  We review the sufficiency of the amended complaint under the standard set forth in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007), namely that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" and "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true . . . ." Id. at 1965.  The amended complaint here does not come close to meeting that standard.

The City's alleged failure to adequately enforce the animal control ordinance prior to March 1, 2006 so that the Smiths' dog would not have attacked plaintiff on March 1, 2006 does not constitute any sort of due process violation, substantive or procedural, whether under a "state created danger"

---

[3] Absolutely no particularization whatever is alleged with respect to any of these wholly conclusory and general allegations.

theory or otherwise. This is clearly established by our prior decisions under analogous facts. Saenz v. Heldenfels Bros. Inc., 183 F.3d 389 (5th Cir. 2003), is directly on point. See also, e.g., Rios v. City of Del Rio, 444 F.3d 417, 423-25 (5th Cir. 2006).[4]

Plaintiff also asserts that her constitutional right to travel was infringed. Saenz v. Roe, 119 S.Ct. 1518, 1525 (1999), states of the constitutional "right to travel" that:

> "It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State."

The complaint does not allege that plaintiff was on an interstate journey on March 1, 2006 nor that she was then using an instrumentality of interstate travel. She merely alleges that on March 1, 2006 she was walking home from her employment at the Adult Day Care Center and the costs of the care there are "paid by the United States through its Medicaid and/or Medicare programs, so that Plaintiff's employment involved Plaintiff in interstate commerce." No authority suggests that those facts in anyway indicate that the dog attack of March 1, 2006 implicates the constitutional right to travel. Nothing in the amended complaint even suggests any discrimination, intentional or otherwise, on the part of the City as respects persons from other states or areas or as respects travel of any kind. Moreover, just as the United States Constitution does not generally obligate states or local governments to protect members of the general public from the criminal or wrongful acts of private persons or their

---

[4] Here there is no allegation of any "special relationship" as referenced in DeShaney v. Winnebago County, 109 S.Ct. 998, 1004, 1006 (1989). Nor does the City's animal control ordinance create federal constitutional rights in members of the general public, such as plaintiff, to proper enforcement of the ordinance as against the Smiths' dog. See Town of Castle Rock, Colo. v. Gonzales, 125 S.Ct. 2796 (2005).

animals which may invade their bodily integrity or property, so also it does not require the states to protect members of the general public against such acts of private persons or their animals which may adversely affect the individual's travel.

Plaintiff also asserts that the City is liable under TEX. CIV. PROC. & REM. CODE § 101.021(2), because the dog that attacked her on March 1, 2006 was personal property. But the Smiths are alleged to have then owned the dog, and to have then possessed it (it being alleged they negligently failed to leash or muzzle it), and there is no allegation that the City ever used (or possessed or controlled) the dog on March 1, 2006. However, "section 101.021(2) waives immunity for the use of personal property only when the governmental unit itself is the user" and "[a] governmental unit does not 'use' personal property merely by allowing someone else to use it and nothing more." San Antonio State Hosp. v. Cowan, 128 S.W.3d 244, 245-46 (Tex. 2004). This applies notwithstanding that the personal property in question is dangerous. Texas A&M Univ. v. Bishop, 156 S.W.3d 580, 583-84 (Tex. 2005).

We affirm the judgment of the district court.

AFFIRMED